## THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, THOMAS A. DAVIES and REUBEN H. CUD-LIPP, Appellants, *v.* RUSSELL SAGE, Respondent.

*Foreclosure of mortgage — taxes and assessments, who liable for.*

In an action brought to foreclose a second mortgage on real estate in the city of New York to which the owner of the first mortgage was not made a party, a judgment was entered directing the referee who was to conduct the sale to pay out of the moneys arising therefrom, after deducting his fees and expenses and "any lien or liens upon the said premises so sold at the time of such sale for taxes or assessments," the costs of the various parties and the amount due to the plaintiff.

By an arrangement with the second mortgagee, who purchased at the sale, the whole amount realized at the sale was, without deducting or paying the taxes and assessments upon the premises (no objection to such an arrangement having been taken by any person a party to such action), paid over to him.

The owner of the first mortgage thereafter foreclosed his mortgage, and under a judgment containing similar provisions for the payment of taxes and assessments the property was sold to it for $50,750; out of this purchase-money there were paid taxes and assessments, which were then liens upon the property, amounting to $22,000. There was due to the plaintiff upon its mortgage at the time of the entry of the judgment the sum of $49,672.89.

In this action brought by the first mortgagee against the defendant (the second mortgagee) who had purchased at the previous sale to recover the amount so paid for taxes and assessments:

*Held,* that as the owner of the first mortgage was not a party to the action brought to foreclose the second mortgage, he was not entitled to enforce those provisions of the judgment entered in such action which provided for the payment of the taxes and assessments; the execution of such provisions having been waived by all the parties to the former action and the purchaser at the first sale.

A portion of the assessments and taxes, so paid by the owner of the first mortgage upon purchasing the property, were imposed and became liens upon it after it had been purchased and while it was owned by the defendant, the second mortgagee.

By statute the tax was a demand which could be personally enforced against the defendant (the owner) by the public authorities, but the provisions of the statute left such action to the discretion of the receiver of taxes.

The statute under which the assessment was laid provided that the " owners or occupants shall also, respectively, be liable upon demand to pay the sum at which such houses or lots, respectively, shall be assessed." In case of default it provided that a warrant to collect the same by distress and sale of the goods of the owner should issue. It further provided that: "If any money so to be assessed be paid by any person, when by agreement or law the same ought to have been borne and paid by some other person, it shall then be lawful for the person paying to sue for and recover the money so paid:"

*Held*, that the defendant was under no obligation to the first mortgagee (the purchaser at the second sale) to pay the amount of the tax, and that no action would lie against him by such mortgagee for his failure so to do.

That he was personally liable for the amount of the assessment, and that the first mortgagee, having paid and discharged it, was entitled under the statute to recover from him the amount so paid.

APPEAL by the plaintiffs from a judgment recovered on a trial at the Special Term. This action was brought by the purchaser at a foreclosure sale of certain mortgaged premises, and by certain parties who had assumed payment of the mortgage foreclosed to recover the amount of certain taxes and assessments from one who had formerly purchased the same premises upon a sale had under foreclosure of a mortgage, which was subordinate in lien to that which was owned by the plaintiff, the insurance company, and under the foreclosure of which the premises had been purchased by it.

To the action in which the sale was had at which the defendant purchased, the plaintiffs in this action were not parties. In that action a judgment was entered directing the referee, who was to conduct the sale, to pay out of the moneys arising therefrom after deducting his fees and expenses, and " any lien or liens upon the said premises so sold at the time of such sale for taxes or assessments," the costs of the various parties, and the amount due to the plaintiff. By an arrangement with such plaintiff in the action brought to foreclose the second mortgage, who was the second mortgagee, and who purchased at such sale, the whol amount realized at the sale was without deducting or paying the taxes

and assessments upon the premises, and without objection on the part of any person a party to such action, paid over to him. The holder of the first mortgage thereafter foreclosed, his mortgage, and under a judgment containing similar provisions for the payment of taxes and assessments, the property was sold to it for $50,750. Out of this purchase-money there was paid taxes and assessments which were then liens upon the property amounting to $22,000. There was due to the plaintiff, the insurance company, upon its mortgage, at the time of the entry of this judgment, the sum of $49,672.89. This action was brought by this first mortgagee against the defendant (the second mortgagee), who had purchased at the previous sale to recover the amount so paid for taxes and assessments.

The tax of 1876, a portion of the tax so paid and sued for in this action, and an assessment for grading, curbing, etc., also paid and sued for in this action, were imposed upon the property while it was owned by this defendant.

By the terms of the statute under which the tax was imposed, it was provided that it might be enforced personally against the owner of the property by the receiver of taxes, but the statute left such action in his discretion.

The statute under which the assessment was laid is set forth in the following opinion:

*Julien T. Davies*, for the appellants.

*A. J. Vanderpoel*, for the respondent.

DANIELS, J.:

The action was brought to recover taxes and assessments imposed upon property in the city of New York, and amounting to about the sum of $22,000. The Mutual Life Insurance Company held a mortgage upon the property to secure the payment of the sum of $44,000, executed on or about the 1st of June, 1870, by the plaintiff, Thomas A. Davies. This property was, in February, 1869, conveyed to the other plaintiff, Cudlipp, who assumed the payment of the mortgage debt. The plaintiff Cudlipp, in July, 1871, conveyed the property to Adriance, who also assumed the payment of the mortgage, but afterwards became insolvent. This grantee also executed two mortgages, one on each half of the property, to secure

the sum of $30,500. These mortgages were afterwards assigned to the defendant who procured them to be foreclosed by actions prosecuted for that purpose in this court. By the judgments recovered, the referee appointed to sell the property was directed that he should pay the defendant, who was plaintiff in those actions, the amounts found due to him after deducting " any lien or liens upon said premises so sold at the time of such sale for taxes and assessments." The referee did not comply with this direction for the payment of the taxes and assessments, but by an arrangement with the defendant, who purchased the property under the judgments, the amounts for which the sales were made were applied towards the payment of the amounts found due by virtue of the judgments. This change was made by his authority, and no complaint whatever was made of it by any party to either of the actions under which these sales were made. After this disposition of the property, the Mutual Life Insurance Company commenced an action for the foreclosure of the mortgage executed to it by the plaintiff Davies. That resulted in a judgment in April, 1877. There was then found due upon this mortgage the sum of $49,672.89, and by its terms the referee appointed to sell the property was in like manner directed to pay the plaintiff in the action the amount found due to it, after deducting the amount of any lien or liens upon the premises for taxes and assessments. Other directions were given in the judgment for the payment of expenses and the costs of the action which do not require to be specially noticed. By virtue of its authority the property was sold and purchased by the Mutual Life Insurance Company for the sum of $50,750, an amount certainly not exceeding that required to be raised for the payment of the sums directed to be paid by the terms of the judgment, excluding the taxes and assessments. Out of this purchase-price the taxes and assessments which were at the time liens upon the property were paid by the attorneys for the plaintiff in that action, and these payments all together amounted to the sum already mentioned of upwards of $22,000. And after deducting such payments from the amount for which the property was purchased, together with the other sums directed to be paid, the residue amounting to the sum of $27,336.45 was paid over to the plaintiff, the Mutual Life Insurance Company.

It is because of the failure of the defendant to pay these taxes and assessments that this action has been brought for their recovery, and as to those which had been imposed upon the property prior to the 25th of October, 1876, which is the date of the delivery of the deeds to the defendant to carry into effect the purchases of this property made by him, the right to maintain the action is wholly dependent upon the terms of the judgments recovered in the two foreclosure actions prosecuted by the defendant himself. But neither the insurance company nor Davies, or Cudlipp, both of whom were charged with the deficiency remaining upon its judgment, was a party to either of such actions prosecuted by the defendant. For that reason it could not have been any part of the design of the judgments recovered by him, or of this clause inserted in each to benefit them or either of them. They were strangers to his proceedings, and the directions given in the judgments were for the exclusive benefit of himself or that of the other parties to the action, or the purchaser of the property, and as they have not complained of the omission to comply with the terms of the direction given for the payment of taxes and assessments, and neither of the plaintiffs derived any right under them, or either of them, to make such a complaint, the insurance company cannot obtain any advantage either from this direction, or the failure to comply with it. That necessarily follows from the fact that they were neither of them a party to the proceeding, and consequently their rights could in no manner be affected by it. It was not a contract the terms of which either of the plaintiffs could insist should be performed, and no benefit was reserved by it to either of these persons. For that reason the case is distinguishable from all those which have been relied upon as authorities establishing some legal principle on which the plaintiffs could maintain this action by force of this provision in these judgments.

In *People ex rel Day* v. *Bergen* (53 N. Y., 404) the observance of a similar direction was insisted upon by the purchaser of the property, who had the right under the terms of the sale to have the taxes and assessments paid off out of its purchase-price, and that right had in no form been waived or surrendered by him. On account of this circumstance this case is entirely different from the one now being considered, for here the defendant as the purchaser

relinquished the right created by this direction of the judgment in his favor.

In *Ranney* v. *Peyser* (20 Hun, 11) a distinct direction had been given concerning the disposition which should be made of the rents and profits received by the receiver, and that direction continued in full force and effect, and it was on account of that circumstance that the receiver was held liable to obey the direction given to him in the order under which he was appointed. These cases, as well as the others which have been brought to the attention of the court, are entirely different from that which is presented by the facts appearing upon the trial of this action. They, neither of them, go so far, or support any principle, as to authorize the maintenance of this action simply upon the force and effect of the direction contained in the judgments recovered by the defendant for the payment of the taxes and assessments existing against the property.

After the defendant had received his deeds the taxes of 1876, amounting to the sum of $1,507.17, were imposed upon the property; so also was an assessment for the expense of regulating and grading, setting curb and gutter stones, and flagging and superstructure of the boulevard or public drive, amounting to the sum of $6,328.56, imposed upon this property. These two sums, with the interest upon them, were in like manner paid by the attorneys representing the insurance company in its foreclosure action, and because they were imposed upon the property while the defendant continued to be its owner under the deeds which had previously been delivered to him, the plaintiffs claim to recover these payments from him. But while the tax itself was a demand which could personally be enforced against the defendant by the public authorities, he was placed under no obligation for its payment for the benefit either of this preceding mortgage or of the persons through whom he had derived his title. The insurance company, by force of its mortgage, had the right to pay off the amount of the tax and add it to its mortgaged debt, and in that manner to preserve the lien for it upon the property, but no authority has gone so far as to sustain an action on its part against the defendant for its recovery personally from him.

But as to the amount of the assessment for the expenses assessed upon this property while the defendant was its owner, for improv-

ing the boulevard, the rights and obligations of the parties depend upon different principles. This work is found to have been performed in accordance with section 175, chapter 86 of the Laws of 1813, and the various laws of the State supplemental and amendatory thereto, including of course chapter 565 of the Laws of 1865, by which this avenue was authorized to be opened. And by the terms of the act of 1813, the amount of the assessment was, in express language, made the debt of the owners of the property, for it was declared by it that, "such owners or occupants shall also, respectively, be liable upon demand to pay the sum at which such houses or lots, respectively, shall be so assessed to such person as the said common council shall appoint to receive the same." (2 Rev. Laws, 1813, 407, § 175.) And it was further provided, that in case of default of payment of the assessment a warrant should be issued to levy the same by distress and sale of the goods and chattels of the owner or occupant refusing or neglecting to pay the same. By force of these provisions, which in their application to this work do not appear to have been changed by subsequent enactments, a personal obligation rested upon the defendant for the payment of the amount of this assessment; and the fact that after receiving his deeds he determined to and did abandon his purchase, and in no way occupied the lands or any part of them, or exercised any act of ownership over them, and never promised to pay the amount of this assessment, had no such effect as to discharge him from this statutory liability, for it was not made to rest or depend upon any other fact or circumstance than that of ownership, and that was shown to be complete under the execution and delivery of the deeds to the defendant. This statute further provided, that "if any money so to be assessed be paid by any person, when by agreement or by law the same ought to have been borne and paid by some other person, it shall then be lawful for the person paying to sue for and recover the money so paid, with interest and costs, as so much money paid for the use of the person who ought to have paid the same." (Id., 408.) This provision has been so clearly enacted as to the right to maintain an action for the recovery of money paid for assessments which another person was legally and primarily bound to pay, as to leave no real ground for doubt concerning the liability of the defendant to refund this money to the insurance company.

The demand was his personal obligation, and it was paid and discharged by the company acting through its attorneys in the foreclosure case, and that is all that has been required to entitle the company to maintain an action for its reimbursement.

The fact that this money was in form taken out of the purchase-price bid for the property by the insurance company will not relieve the defendant from the obligation imposed upon him by these statutory provisions, for while it is true that the sum paid was deducted out of the purchase-price of the property itself, it is still equally so that it was taken from the moneys which the insurance company, as mortgagee, would otherwise have received upon its mortgage debt. In this transaction it sustained a double relation, that of purchaser and also that of creditor. All that it bid for the purchase of the property, beyond the payment of the expenses of the action and of the sale made pursuant to the judgment, it was, as between itself and the defendant, entitled to receive upon its mortgage debt. That difference was the money of the insurance company, and when instead of being paid over to it this money was in part appropriated to the payment of this assessment, it constituted a payment by the company as the first mortgagee and not as a purchaser of this property. These facts appear clearly from the evidence in the case, and they have been found by the judge presiding at the trial, notwithstanding the subsequent statement that the amount was paid by the company as purchaser under its decree. The controlling circumstances show that as a matter of fact this latter was an erroneous view, for the money that was paid was deducted from the amount the company was entitled to receive under its judgment to be applied upon its mortgage debt.

It was, consequently, a payment from that amount made by the company out of its own moneys. So far as it was held by the judgment that the insurance company was not entitled to be reimbursed for the amount paid for the extinguishment of this assessment it was erroneous and the judgment should accordingly be reversed and a new trial ordered, with costs to the appellants to abide the event.

DAVIS, P. J., and DWIGHT, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.